558 P.2d 908

STATE of Arizona, Appellee,

v.

William E. (Earl) BUTRICK, Appellant.

No. 3653.

Supreme Court of Arizona, En Banc.

Dec. 28, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant William E. Butrick was charged by information with aggravated assault while armed with a gun or deadly weapon in violation of A.R.S. §§ 13–241 and 13–245(A) and (C). After trial without a jury, the court convicted appellant of exhibiting a deadly weapon other than in self-defense, a violation of A.R.S. § 13–916, suspended imposition of the sentence and placed him on five years probation. From this conviction and sentence Butrick appeals. We have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5).

The facts out of which this conviction and sentence arose were in great dispute at trial, but apparently began when the Phoenix police were called to the scene of a domestic quarrel at appellant's home. There is no question that appellant had in his possession a machete knife sometime while the police were present in his home. The testimony of defense and state witnesses, however, differed considerably as to how appellant handled that knife and himself during the incident. The trial judge apparently felt there was reasonable doubt with regard to the elements of aggravated assault and, instead, convicted the appellant of what he believed was a lesser included offense, exhibiting a deadly weapon other than in self-defense.

A motion to suppress certain evidence was made by defense and a hearing thereon was scheduled for the morning of the trial. Many of the defense and state witnesses testified at that hearing. After the hearing was completed the record reveals an off-the-record discussion, a recess at 3:15 p. m., and a recommencement of the proceedings at 3:20 p. m.

At this point, the following exchange took place:

"PROSECUTOR: This is Officer Boynton. I take it we're at the point where we're starting the trial. This is my first witness.

. . . . .

Call Officer Boynton to the stand please."

The officer took the stand, a few preliminary questions were asked, then the following occurred:

"THE COURT: Claire brought to my attention the fact that we don't have a waiver of a trial by jury form.

"DEFENSE COUNSEL: Okay that's, I believe, correct, your Honor. Perhaps we should—

"THE CLERK: Do you want a form?

"DEFENSE COUNSEL: Yeah.

"PROSECUTOR: Judge, do you want me to go ahead or wait?

"THE COURT: You can go ahead, I guess."

The prosecutor did, then, proceed with the questioning of his witness.

This is the only mention, before or during the trial, of a waiver of jury by the appellant. The hearing and trial were completed in one day, October 16, 1975. On October 20, 1975, the parties returned to the court for closing arguments. At this time, the following exchange took place:

"THE COURT: . . . Mr. Butrick, you were here one day last week and had a trial to the Court, as I recall. At the time the trial began, you understood there was no jury involved; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you had never seen a jury sit in; is that right?

"THE DEFENDANT: Right.

"THE COURT: So you knew you were being tried without a jury, did you?

"THE DEFENDANT: Yes, sir.

"THE COURT: And that was what you wanted?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you agreed to that; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Had anybody tried to force you to give up your right to a trial by jury?

"THE DEFENDANT: No, sir.

"THE COURT: Had anybody made promises to you of anything at all to get you to give your right to trial by jury up?

"THE DEFENDANT: No, sir.

"THE COURT: A thing that should have been done but wasn't done, and that's my fault as much as anybody else's. I guess several of us share in the fault, but at least a share of it is mine. I should have gotten you to sign this Waiver of a Trial by Jury. Did you sign it? I guess you did, didn't you?

"THE DEFENDANT: Yeah. I signed it; that's my signature.

"THE COURT: And that was on 10/16/75. Apparently the only thing that wasn't done is I didn't accept it and approve it.

"DEFENSE COUNSEL: That's right.

"THE COURT: At this time I approve it and find it knowingly, voluntarily and intelligently made."

The waiver form was filed, and a minute order issued on October 20, 1975 purported to make this entire portion of the record a "nunc pro tunc" entry.

Appellant raises two issues on appeal:

1. Was 17 A.R.S. Rules of Criminal Procedure, rule 18.1(b) violated by the approval of the waiver after trial, and the manner in which it was taken?

2. Did the trial court err in convicting appellant of an offense which is not a lesser included offense of A.R.S. § 13–245?

### EX POST FACTO APPROVAL OF WAIVER

█ The right to a jury trial is a fundamental right secured to all persons accused of a crime by the Sixth Amendment of the United States Constitution and, in Arizona, by Article 2, §§ 23 and 24 of the Arizona Constitution. It is a right that may be waived, however, when the waiver is volun-

tarily and intelligently made by the accused. *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); *State v. Durham*, 111 Ariz. 19, 523 P.2d 47 (1974).

Waiver of this right in Arizona is governed by 17 A.R.S. Rules of Criminal Procedure, rule 18.1(b), which says,

"The defendant may waive his right to trial by jury with consent of the prosecution and the court.

(1) *Voluntariness.* Before accepting a waiver the court shall address the defendant personally, advise him of his right to a jury trial and ascertain that the waiver is knowing, voluntary and intelligent.

(2) *Form of waiver.* A waiver . . . under this rule shall be made in writing or in open court on the record. . . ."

In *State v. Crowley*, 111 Ariz. 308, 528 P.2d 834 (1974), this court held that a trial record must affirmatively show a defendant knows he is giving up his or her right to a jury trial when it is waived, and a signed document with a simple recital that his or her rights have been discussed with defense counsel is insufficient to meet the requirement of an affirmative showing.

In *Crowley, supra,* however, we were concerned not with just a waiver of a jury, but with the waiver of a jury and a submission of the entire question of guilt or innocence to the court based only on the preliminary hearing transcript. There we were talking about the defendant doing something tantamount to pleading guilty, and, in view thereof, determined that the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), should apply to the situation.

In the case before us, we have several factual differences from *Crowley, supra.* To begin with, the waiver of the jury is not tantamount to a plea of guilty. That is abundantly clear from the fact that a trial with the taking of testimony was had.

Secondly, in *Crowley, supra,* the form waiver signed simply recited that the defendant had "fully discussed all legal questions and constitutional rights with his attorney." In the instant case, the waiver form signed by the appellant on the day the trial began, advised him of his right to a jury trial and explained what the right meant and what a jury was.* It was not just a recital that the defendant discussed and understood his right to a jury trial; it laid out his right, what is meant and that its waiver meant a judge would decide his guilt or innocence.

Also, in *Crowley, supra,* even though it was determined that the proper procedure had not been followed for determining whether the waivers were knowing, voluntary and intelligent, we remanded the case for an ex post facto determination thereof. In effect, we approved there the procedure followed in the case before us: a determination, after the rights were given up, of whether they were forsaken in accordance with due process of law.

Further, our rule 18.1(b)(2) specifically says the waiver may be made in writing *or* in open court. We do wish to clarify, at this juncture, any apparent ambiguity between our rule 18.1(b)(1) and 18.1(b)(2). Although the defendant's waiver may be either written or oral, pursuant to 18.1(b)(2), the court must always address the defendant personally, pursuant to 18.1(b)(1) to ascertain "that the waiver is knowing, voluntary and intelligent."

Whether there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case. *Adams v. United States*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *State v. Smith*, 112 Ariz. 321, 541 P.2d 918 (1975). We find that upon the unique circumstances of this case, the waiver of the right to a trial by jury was knowing, voluntary and intelligent and although the trial judge fulfilled his obligation under rule 18.1(b)(1) somewhat belated-

---

* The pertinent clause read: "I understand that I am entitled to a trial by jury on these charges, and that the right to jury means the right to have my guilt or innocence decided by a group of ordinary people whose decision must be unanimous."

ly, he did fulfill it. We also find that the manner in which he did it was sufficient. It is obvious from appellant's answers to the court's inquiry, quoted herein, that he knowingly, voluntarily and intelligently waived a jury, with the assistance of counsel.

## ERRONEOUS CONVICTION

Appellant was informed against for a violation of A.R.S. § 13–241 and § 13–245(A)(7) and (C). He was convicted of a violation of A.R.S. § 13–916.

 The test in Arizona for determining whether one offense is a lesser included of a greater offense is whether the greater offense is one that cannot be committed without necessarily committing the lesser. *State v. Westbrook,* 79 Ariz. 116, 285 P.2d 161 (1954); *State v. Woody,* 108 Ariz. 284, 496 P.2d 584 (1972).

The elements of aggravated assault under § 13–245 combine the elements of that statute plus those of § 13–241(A). They are, in connection with the charges herein, (1) an unlawful attempt, (2) coupled with present ability, (3) to commit a physical injury on another person, (4) whom the offender knows, or has reason to know, is a peace officer [§ 13–245(A)(7)] or (1) an unlawful attempt, (2) coupled with present ability, (3) to commit a physical injury on another person, (4) armed with a gun or other deadly weapon [§ 13–245(C)].

The elements of § 13–916 are, (1) drawing or exhibiting a deadly weapon in a threatening manner, (2) in the presence of another, (3) not in self-defense.

Obviously the element of drawing or exhibiting a deadly weapon is not an element of § 13–245(A)(7). It is also not an element of § 13–245(C), in view of our opinion in *State v. Herkshan,* 105 Ariz. 394, 465 P.2d 587 (1970), wherein we held that the weapon need not be actually revealed during the assault in order to obtain a conviction under this section of our criminal laws.

It is possible, therefore, to commit the offense of aggravated assault under § 13–245 without committing the offense of exhibiting a deadly weapon under § 13–916. Consequently, § 13–916 is not a lesser included offense of § 13–245.

Not having been given the requisite notice required by due process to defend against the charge for which he was convicted, appellant's conviction cannot stand. For this reason we must reverse.

Since the failure of the trier of fact to find appellant guilty of the original charge amounts to an acquittal thereof, reindictment on that charge or any lesser included offense thereof is constitutionally prohibited by the double jeopardy it would impose. We see no constitutional infirmity, however, in a proper indictment or information against appellant for a violation of A.R.S. § 13–916, giving him the requisite notice denied him in this proceeding.

We therefore reverse the conviction without prejudice to the State if it wishes to file the appropriate charge.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.