NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHEYENNE DEAN MOORE, *Appellant*.

No. 1 CA-CR 19-0663
FILED 12-17-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201800830
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1        Cheyenne Dean Moore appeals his convictions and sentences for one count of luring a minor for sexual exploitation and two counts of sexual conduct with a minor under the age of fifteen.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY[1]

¶2        Moore, who was twenty-seven years old, began chatting with C.A., who was fourteen, using a social media messaging application.  C.A. told Moore she was fourteen.  Moore requested pictures of C.A., and she sent him pictures of herself in her underwear.  Moore sent C.A. a picture of his penis.  In April 2018, Moore met C.A. at an elementary school and had sex with her in a stairwell.  The next day, Moore met C.A. at an apartment where she was babysitting and had sex with her again.  C.A. told a school counselor about the sexual conduct, and police arrested Moore.

¶3        A grand jury indicted Moore for one count of luring a minor for sexual exploitation (Count 1) and two counts of sexual conduct with a minor under the age of fifteen (Counts 2 and 3).  Several days before trial, the superior court granted Moore's request to represent himself with advisory counsel's assistance.  Moore waived his right to a jury trial.  On the first day of the trial, Moore represented himself until it was time to cross-examine the State's first witness, C.A.  Moore then requested the superior court to reappoint his advisory counsel, Mr. Puchek, as counsel. The court did so, and Puchek represented Moore for the duration of the trial.  The superior court convicted Moore as charged and found each count was a dangerous crime against a child.  The court sentenced Moore to twelve years in prison for Count 1 and twenty years in prison each for Counts 2 and 3, with all sentences to be served consecutively.  Moore timely appealed, and we have jurisdiction pursuant to Arizona Constitution article

---

[1]        We view the evidence in the light most favorable to sustaining the convictions.  *See State v. Cropper*, 205 Ariz. 181, 182, ¶ 2 (2003).

6, section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

I.       Failure to Sua Sponte Order a Second Competency Evaluation

**¶4**          Moore first argues the superior court erred by failing to sua sponte order a second Arizona Rule of Criminal Procedure ("Rule") 11 competency evaluation to determine whether he was competent to stand trial, waive counsel, and waive a jury.

**¶5**          Moore underwent a Rule 11 evaluation in September 2018. The evaluator noted that Moore appeared "to be a little grandiose and present[ed] a very eccentric personality structure," was "clearly of at least average intelligence with no deficits in his intellectual functioning," and "did not appear to be either paranoid or frankly delusional." Further, Moore had "a very good grasp of the charges against him as well as a very good grasp of court proceedings, and the roles of the various individuals in a courtroom setting." The evaluator noted that Moore had previously undergone in-patient treatment for paranoid and delusional behavior but was no longer receiving psychiatric treatment. The evaluator suspected Moore had an underlying mental illness[2] but concluded he was "clearly competent to go through court proceedings." In October 2018, the superior court found Moore competent to stand trial.

**¶6**          A defendant is competent to stand trial if the defendant understands the proceedings and has a "sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding." *State v. Ibeabuchi*, 248 Ariz. 412, 436, ¶ 16 (App. 2020) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "The trial court has broad discretion in determining whether reasonable grounds exist to order a competency hearing and its decision will not be reversed absent a manifest abuse of discretion." *State v. Amaya-Ruiz*, 166 Ariz. 152, 162 (1990). The superior court is under a continuing duty to inquire into a defendant's competency and order a Rule 11 examination sua sponte if reasonable grounds exist to do so. *Id.*

**¶7**          "A mentally incompetent defendant cannot knowingly or intelligently waive constitutional rights." *State v. Cornell*, 179 Ariz. 314, 322

---

[2]      The evaluator diagnosed Moore with schizotypal personality traits and gave a rule out diagnosis of "schizophrenia, undifferentiated type, sub chronic."

(1994).  The test for whether a competency hearing is mandated before a defendant waives a constitutional right such as the right to waive counsel "is whether, on the basis of the facts and circumstances known to the trial judge, there was or should have been a good faith doubt about the defendant's ability to understand the nature and consequences of the waiver, or to participate intelligently in the proceedings and to make a reasoned choice among the alternatives presented."  *Id.* at 322-23 (internal quotation omitted).  A diagnosis of mental illness does not preclude a valid waiver.  *Id.* at 322.

**¶8**      Moore argues his October 2018 Rule 11 evaluation should have prompted the superior court to order another evaluation before finding him competent to waive counsel and a jury because the evaluator "noted that Moore had been treated inpatient in the past for delusions, had been medicated in the past, and suffered from unknown underlying mental illness."  However, the evaluator found Moore competent to stand trial despite his mental health history, and Moore's participation in the hearing on his motions to represent himself and to waive a jury trial gave the court no reason to suspect he was unable to understand the nature and consequences of the waivers or make "reasoned choice[s] among the alternatives presented."  *See Cornell*, at 322-23 (internal quotation omitted); *see also State v. Lynch*, 225 Ariz. 27, 34, ¶ 18 (2010) (finding the trial court did not err in denying a request for a second competency evaluation when prior experts considered defendant's "delusions but concluded that they did not render him incompetent").  The record demonstrates that Moore answered the superior court's questions intelligently during the colloquies.  And although not dispositive, Moore's attorney, who filed the motion resulting in Moore's first competency evaluation and was familiar with the results of the evaluation, told the court he believed Moore was competent both to seek to represent himself and to waive a jury trial.  *See Bishop v. Superior Court*, 150 Ariz. 404, 408-09 (1986) ("[O]n the question of competency to comprehend the proceedings and assist the attorney, the defense lawyer is often the most cogent witness.").

**¶9**      Moore also argues the "kites" he sent the superior court[3] before and after the trial were evidence that he was "delusional around the time of trial" and suffered from a serious mental condition that affected his

---

[3]      The kites were not considered by the superior court.  Noting the kites were ex parte communication from Moore, the superior court attached cover sheets to each kite which stated the court would not review or take further action except to direct the clerk's office to send copies to the State and defense counsel.

competency to waive counsel or a jury. In the kite Moore sent the court in April 2019, Moore stated that he was innocent, asked the court to release him, and further stated he had "sovereignty it is independent power and authority to self-govern and Judge without external control." In the kites Moore filed in the month after trial, he maintained his innocence, asked the superior court to acquit him, claimed that God was testing him because God was preparing him to be royalty, and claimed to have dealings with Donald Trump.

¶10 Although the kites contain some bizarre assertions, they are consistent with the Rule 11 evaluator's opinion that Moore was grandiose and had "a very eccentric personality structure." We disagree that the kites, one submitted months before the trial and the others after Moore's conviction, prove that the superior court should not have determined he was competent to waive his rights several days before trial. "Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Indiana v. Edwards*, 554 U.S. 164, 175 (2008). The superior court had the broad discretion not to sua sponte order a second Rule 11 examination before allowing Moore to waive his rights to representation and a jury, and it did so only after finding Moore knowingly, intelligently, and voluntarily waived those rights. We find no abuse of discretion.

II. Waiver of Jury Trial

¶11 Moore next argues the superior court erred by finding he knowingly, intelligently, and voluntarily waived his right to a jury trial. He contends the court failed to conduct an adequate colloquy to confirm he was competent to waive his right to a jury trial, and the court's error was structural error entitling him to a new trial. *See State v. Le Noble*, 216 Ariz. 180, 184, ¶ 19 (App. 2007) ("[T]he complete failure of the trial court to notify and explain to a defendant the right to a jury trial and to obtain a knowing, intelligent and voluntary waiver of that right" is structural error.); *see also State v. Baker*, 217 Ariz. 118, 122, ¶ 20 (App. 2007).

¶12 The right to a jury trial is a fundamental right of all defendants under the Sixth Amendment to the United States Constitution ("Sixth Amendment") and Article 2, sections 23 and 24 of the Arizona Constitution. *State v. Butrick*, 113 Ariz. 563, 565 (1976). "[A] jury trial waiver is valid only if the defendant is aware of the right and manifests an intentional relinquishment or abandonment of such right." *Baker*, 217 Ariz. at 120, ¶ 7. Before accepting a waiver, the superior court must "address the defendant personally, inform the defendant of the defendant's right to a jury trial, and

determine that the defendant's waiver is knowing, voluntary, and intelligent." Ariz. R. Crim. P. 18.1(b)(2). A defendant's waiver may be either written or oral. Ariz. R. Crim. P. 18.1(b)(3). Whether there is a knowing, voluntary, and intelligent waiver by a defendant depends on each case's unique circumstances. *Butrick*, 113 Ariz. at 566.

¶13        Here, after Moore indicated he wanted to waive his right to a jury trial and the State agreed, the superior court engaged in a verbal colloquy with him. *See* A.R.S. § 13-3983 ("A trial by jury may be waived in criminal actions by the consent of both parties expressed in open court and entered on its minutes."). The court asked Moore whether he knew he had a right to have a jury decide whether he was guilty of the charged offenses, and he replied that he did. The court asked Moore if he understood there might be advantages or disadvantages to having a jury decide his guilt or innocence—Moore answered in the affirmative. The court told Moore that having a jury trial was "an absolute right" that he had, and asked whether anyone had forced, threatened, or bribed him to get him to waive his right to a jury trial. Moore stated, "No, Your Honor."

¶14        Next, the court asked Moore whether he needed to talk to his advisory counsel about whether he wanted to waive his right to a jury. Moore replied that he "definitely [had] decided to waive my right to have a jury," but that he wanted more time to discuss his defense with advisory counsel. The court asked Moore whether he was "knowingly, intelligently, and voluntarily waiving [his] right to have a jury" and Moore said, "Yes, Your Honor." The court asked advisory counsel and the State's attorney whether there was anything else the court should discuss with Moore before the court decided whether he could waive his right to a jury and both attorneys said no. The court then found that Moore knowingly, intelligently, and voluntarily waived his right to a jury trial and set the matter for a bench trial.

¶15        Moore's waiver, made orally on the record, complied with A.R.S. § 13-3983 and Rule 18.1(b). The court informed Moore of his right to a jury trial and addressed him personally to ascertain that his waiver was knowing, voluntary, and intelligent. *See Butrick*, 113 Ariz. at 566. Moore unequivocally asserted his right to represent himself. Although Moore argues "there was no written signed waiver or indication of the equivalent," Rule 18.1(b)(3) states explicitly that a defendant's waiver of a jury trial may either be made in writing or on the record in open court. Without citation to authority, Moore also argues there should have been a colloquy establishing that he discussed waiving his right to a jury trial with counsel and "[t]here was no statement by defense counsel saying that 'I

have explained to the defendant his right to trial by jury and consent to his waiver of it.'" Moore fails to develop or provide any authority in support of this argument. Therefore, it is waived on appeal. *See State v. King*, 226 Ariz. 253, 257, ¶ 11 (App. 2011) (opening brief must present significant argument supported by legal authority). Moore further asserts that his waiver was invalid because the court engaged in the colloquy after waiving his right to counsel. Because Moore cites no authority to support the argument that his waiver was not knowing, voluntary, and intelligent only because he was acting *in propria persona* at the time of the waiver, this argument is also waived on appeal. On this record, we find no error or violation of Moore's constitutional rights.

III.    Request for a Continuance

**¶16**    Moore next argues the superior court abused its discretion by denying his motion to continue and that the denial violated his right to represent himself, thereby violating his rights under the Sixth Amendment. We review the superior court's decision to grant a defendant a continuance made in conjunction with a motion to proceed *pro se* for an abuse of discretion. *State v. Lamar*, 205 Ariz. 431, 436, ¶ 26 (2003).

**¶17**    Moore first asked for a one-week continuance on October 17, 2019, after the superior court granted his motion to represent himself. The State objected to the motion to continue. The next day, on the Friday before the start of his trial on Monday, Moore filed a written motion to continue. Moore's motion stated he "might need" more time to prepare for trial, but that on Monday he would "know for sure if [he was] ready or not." The motion further stated that Moore would "most likely need more time to make a strategy based off of what evidence will and will not be admissible." The court denied the motion to continue, finding that Moore had failed to establish that extraordinary circumstances existed or that delay was indispensable to the interest of justice. *See* Ariz. R. Crim. P. 8.5(b). The court also stated it had considered the victim's rights to a speedy disposition of the case. *See id.* Moore renewed his motion on the morning of the first day of trial, and the court again denied the motion.

**¶18**    "A trial court maintains discretion [to determine whether to grant a continuance made in conjunction with a motion to proceed *pro se*] because a defendant's right to represent himself does not exist in a vacuum." *Lamar*, 205 Ariz. at 436, ¶ 27. "The court must consider the defendant's right in conjunction with a victim's constitutional right to a speedy trial and the trial court's prerogative to control its own docket." *Id.* (footnote omitted). Whether a defendant's constitutional rights are violated

by the superior court's denial of a continuance depends on a particular case's facts and circumstances. *Id.* at 437, ¶ 28.

**¶19** When Moore made the motion to continue, the trial was two business days away, and witnesses were scheduled to appear. Moore was equivocal about whether he needed a continuance, and the decision not to continue the trial was well within the superior court's discretion. Accordingly, we find no abuse of discretion.

IV. Failure to Appoint New Counsel

**¶20** Finally, Moore argues the superior court violated his Sixth Amendment right to counsel by failing to appoint him new counsel because he had an irreconcilable conflict with his attorney, Mr. Puchek.

**¶21** In his opening brief, Moore claims to have requested new counsel and that the superior court "held a hearing on [Moore]'s request for a new attorney, and his motion to represent himself" on October 17, 2019. He also references Puchek's motion to withdraw filed in November 2018 but does not specifically reference any other motion.

**¶22** At the October 17, 2019 hearing, Puchek told the court that he and Moore had experienced differences over strategy, and that Moore told him Moore wanted to fire him unless he got the case dismissed. The court asked Moore, "And, Mr. Moore, I just want to clarify, are you asking for a new attorney to be appointed, or are you asking for something different than that?" Moore replied, "Your Honor, I am asking to represent myself and to have an advisory counsel so I can have full power of attorney for myself." Moore told the court he wanted a different attorney as advisory counsel, and the court stated, "if I appoint advisory counsel, the advisory counsel that I would be appointing is Mr. Puchek." Moore replied, "I think Mr. Puchek would be a good advisory counsel, just as long as I could write the motions to make sure that I get what I want." After going through a colloquy, the court granted Moore's request to represent himself and appointed Puchek as advisory counsel.

**¶23** Moore's assertion that he made a request for new counsel on October 17, 2019, is not supported by the record.[4] And it is undisputed that

---

[4] Furthermore, at the December 4, 2018 hearing on Mr. Puchek's motion to withdraw, after the court told Moore that Puchek was an experienced attorney with whom he should cooperate, Moore told the court, "Your Honor, if he is the most competent attorney that the state can

Moore never filed a written motion for change of counsel. *See* Ariz. R. Crim. P. 1.9(a) ("A motion must include a memorandum that states facts, arguments, and authorities pertinent to the motion."). Nor is there any suggestion that the court waived the writing requirement. *See* Ariz. R. Crim. P. 1.9(d). Because no such motion was made, the authority cited by Moore to support his argument that the superior court should have appointed new counsel is inapplicable. *See, e.g.*, *State v. Torres*, 208 Ariz. 340, 343, ¶ 7 (2004) (discussing the superior court's duty to inquire about "the basis of *a defendant's request for substitution of counsel*") (emphasis added); *State v. LaGrand*, 152 Ariz. 483, 486-87 (1987) (discussing the factors the superior court should consider when ruling on a motion for change of counsel). We find no abuse of discretion or violation of Moore's Sixth Amendment right to counsel.

**CONCLUSION**

**¶24**        For the foregoing reasons, we affirm Moore's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

provide me, then what makes you think that anyone else is going to be competent enough to represent me if he's the best? I'm . . . going to go ahead and say that any person who did is going to be completely incompetent. So you might as well keep him on unless there's somebody better."